**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **CHRISTINA PIEDRA,** | ) |
| | ) |
| Plaintiff, | )   Case No. 8:22-cv-926 |
| | ) |
| v. | ) |
| | ) |
| **GTE FEDERAL CREDIT UNION** | ) |
| **d/b/a GTE FINANCIAL,** | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the plaintiff, CHRISTINA PIEDRA, by and through her attorneys, SMITHMARCO, P.C., and for her Complaint against the defendant, GTE FEDERAL CREDIT UNION d/b/a GTE FINANCIAL, Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. CHRISTINA PIEDRA, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Tampa, County of Hillsborough, State of Florida.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. GTE FEDERAL CREDIT UNION D/B/A GTE FINANCIAL, (hereinafter, "Defendant") is a business entity engaged in providing consumer loans and financing as well as other financial services within the State of Florida. Defendant's principal place of business is located in the State of Florida.

7. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

### IV.   ALLEGATIONS

8. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

9. Prior to March 30, 2021, Plaintiff had an account with Defendant.

10. Upon information and belief, the account Plaintiff had with Defendant was for a car loan.

11. On March 30, 2021, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Middle District of Florida (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 21-bk-01507-CPM.

12. At the time Plaintiff filed her Bankruptcy Petition, she owed a debt to Defendant (hereinafter, "the Debt").

13. The Debt was for a deficiency balance that remained after Defendant repossessed a vehicle from Plaintiff.

14. Plaintiff scheduled the Debt in her Bankruptcy Petition.

15. At the time Plaintiff filed her bankruptcy petition, she owed no other debt to Defendant.

16. At the time Plaintiff filed her bankruptcy petition, she had no other accounts with Defendant.

17. On or about July 8, 2021, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing her liability for the Debt (hereinafter, "the Discharge Order").

18. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship ended between Plaintiff and Defendant as to the Debt

19. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

20. Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in her estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was

specifically listed in Plaintiff's schedule of creditors, filed as part of her Bankruptcy Petition.

21.   The Debt, and any other account(s) Plaintiff had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Plaintiff filed her Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

22.   On or about July 10, 2021, the Bankruptcy Court served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

23.   As of July 10, 2021, Defendant was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

24.   At no time since July 8, 2021 has Plaintiff owed any debt to Defendant.

25.   At no time since July 8, 2021 has Plaintiff opened any accounts with Defendant.

26.   At no time since July 8, 2021 has Plaintiff had any personal business relationship with Defendant.

27.   Given the facts delineated above, at no time since July 8, 2021 has Defendant had any information in its possession to suggest that Plaintiff owed a debt to Defendant.

28.   Given the facts delineated above, at no time since July 8, 2021 has Defendant had any information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

29. Equifax Information Services, LLC (hereinafter, "Equifax") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Equifax is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

30. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

31. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

32. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir.

2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

33. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

34. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

35. Defendant is a subscriber and user of consumer reports issued by Equifax.

36. Defendant also furnishes data to Equifax about its experiences with its customers and potential customers.

37. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

38. Defendant has a symbiotic relationship with Equifax such that it furnishes information to Equifax regarding its transactions and/or other experiences with consumers while also purchasing from Equifax information about its customers and other consumers.

39. On or about September 7, 2021, despite being cognizant of the facts as delineated above, Defendant procured from Equifax a copy of Plaintiff's consumer report at which time, Defendant made a general or specific certification to Equifax that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

40. The certification made by Defendant to Equifax was false.

41. Despite certifying to Equifax that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

42. At no time on or prior to September 7, 2021 did Plaintiff consent to Defendant obtaining her consumer report.

43. On or about September 7, 2021, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report.

44. On or about September 7, 2021, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

45. On or about September 7, 2021, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

46. On or about September 7, 2021, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

47. On or about September 7, 2021, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

48. Plaintiff has a right to have her Confidential Information kept private.

49. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides her consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

50. Defendant procured from Equifax Plaintiff's consumer report without her knowledge or consent.

51. Defendant procured from Equifax Plaintiff's consumer report without a permissible purpose.

52. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant knew that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

53. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant should have known that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

54. By its actions, when Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

55. By its actions, when Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

56. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Equifax, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of her privacy.

57. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Equifax, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of her

personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

58. When Plaintiff discovered that Defendant had procured her Confidential Information from Equifax, Plaintiff was concerned about the continued security and privacy of her Confidential Information.

59. When Plaintiff received her Discharge Order from the Bankruptcy Court, she rightfully believed that her business relationship with Defendant had come to an end. When Plaintiff discovered that Defendant had procured her Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believed that Defendant would continue to act with impunity and continue to procure her Confidential Information indefinitely.

60. The actions of Defendant caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that Plaintiff had difficulty falling to sleep and/or staying asleep due to restlessness due to concern about the continued access of her private confidential information.

## V.   JURY DEMAND

61. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CHRISTINA PIEDRA, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

    c.    Punitive damages;

    d.    Plaintiff's attorneys' fees and costs; and,

    e.    Any other relief deemed appropriate by this Honorable Court.

                                                Respectfully submitted,
                                                **CHRISTINA PIEDRA**

                                     By:   s/ David M. Marco
                                                Attorney for Plaintiff

Dated: April 20, 2022

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Court
Sarasota, FL 34240
Telephone:  (312) 546-6539
Facsimile: (888) 418-1277
E-Mail:    dmarco@smithmarco.com